Good morning. Margaret Littlefield appearing for Petitioner Bernard MacCarlie. May it please the Court. This case presents the perfect storm of an erroneous instruction applied to facts that so fed into that instruction, the erroneous instruction, that it substantially and injuriously affected the verdict. So again, this is a little bit difficult procedurally, but I just want to make sure, Counsel, that we're on the same wavelength. It seems to me that our question really in front of us right now is, was the state court's harmless error determination contrary to or an unreasonable application of clearly established constitutional law? Would you agree with that? I believe that this circuit has decided that you don't have to apply. You go directly to the Brecht analysis of substantial and injurious effect. That would be Polito. Well, I understand with it, but even under Brecht, it seems to me that we don't have anything to decide here except whether this error was prejudicial under the harmless error standard. Well, as I understand Polito and Brecht, the question here is, was it substantially injurious to the, in the case of the verdict reached? Well, I understand. So we're really talking about whether this was harmless error, given a bad instruction was this harmless error. Isn't that what we're really trying to determine? Well, I mean, I guess that would be another way of saying it. Okay. Well, I just wanted to make sure because, I mean, as we framed the issue under COA, we said whether the state trials court's jury instructions regarding conspiracy violated the right to due process. But when I saw that and I tried to boil it down, again, it came back to Brecht. And we're really talking about whether it's harmless error. Number one, is it error? Number two, is it harmless under Brecht? And that's why I wanted to make sure you were in agreement with me. Okay. Okay. All right. At any rate, the facts of this case lend themselves so perfectly to the misinstruction on implied malice because these, this was, what happened over these two or three days that the problem. Yeah, but during the argument in the case, the whole case was tried under not implied malice but actual malice and all the other facts. And under Brecht, as I understand it, is that you have to take a look at the entire trial transcript. In other words, the entire trial, not just the specific instruction. And the other instructions, it seems, are all correct. And the arguments were all correct in that they really didn't argue implied malice. So where do you get the extra other than that one bit of that one instruction? I believe that the prosecutor suggested implied malice. He may not have used those in a number of instances where the prosecutor kept talking about these people were going to do something, they were going to do him, and all of that feeds into an implied malice. Well, if I look at the first comment of the prosecutor, and I looked at it pretty carefully, it seemed to me that the best I could say from that was the prosecutor was explaining why the law should consider the crime of conspiracy to be a very dangerous one. Well, that may be true for us as lawyers or legal scholars. Whether that was true for a jury of laypeople is completely, I think, an open question. I don't think that the prosecutor – I think the prosecutor was applying it to this situation, because this is a situation that fits that description. Well, if I look at the – and again, I'm on a Brecht analysis, so I'm looking at harmful error. When they started the – when the prosecutor starts the argument, evidence showed that the conspirators deliberately set out to torture and repeatedly stab Hopp in order to cause him to suffer as they killed him. The prosecutor says, out-of-body experience is simply an attempt to mask the lie. Then, there's one bond statement to the defendant. Bird, we'll come back and finish him later. The conversations at the picnic table with the defendant there. Sutton was asked to help the group kill Hopp. What we have here is a bunch of people acting together, the prosecutor says, to accomplish a very specific end, kill Hopp. The defendant told Hopp to get into the truck to transport him to the isolated log landing, whether he was to be – where he was to be, quote-unquote, dispatched. I mean, if I read the argument of the prosecutor, and then I take those comments from it, I'm still having a tough time understanding how you can suggest the prosecutor was not looking for expressed malice in his argument. All right. Well, first of all, that – that argument could also just pertain to the murder itself. And I believe that in the context of his – of his whole argument, that he was talking about the murder, how – that it was planned and deliberate, et cetera. A murder – but then throughout his argument, he also says that, you know, that – that there were – they were – they were going to do something to Hopp. So it's not clear when he says that, that he's saying they were going to murder him. And then – Well, but not only that, but then the defense attorney gets up after the prosecutor gets through, and I read what the defense attorney says. He says, you must unanimously agree and find beyond a reasonable doubt that the defendants conspired to commit first-degree murder in order to find the defendants guilty of conspiracy. So I mean, here we got the prosecutor saying what they said. We got the defense counsel saying what they said. I'm having a tough time understanding how the argument made a difference. How the argument – Made any difference to help you on a Brecht analysis? The prosecutor's argument. Yeah. Again, you have to look at the whole record. And there are a lot of statements by the prosecutor that veer away from this was a first-degree – a conspiracy to commit first-degree murder or express malice murder. He never uses those words. He never says this is an express malice murder, in fact. And again, the evidence is so susceptible here. These people were clearly barely functional, irrational. All of them were drunk most of the time. It was clear that they probably were, you know, chronically drunk, which meant that, you know, there had been long-term effects from this alcoholism. And that's the whole group as a whole. Then in McCarley's case, there was plenty of evidence showing that all of those deficits applied in his mind – or to his mind, so to speak. And I just believe that the jury, hearing all of that evidence and hearing all of the prosecutor's comments about, oh, we were planning on doing something – we were planning on committing mayhem on Hopp. And then he argues reasonable and probable consequences. If it's reasonable and probable that by committing mayhem you end up killing somebody, that's an implied malice murder. That's not an express malice murder. Is there any evidence that the jury had any problems with the conspiracy instructions? There's no question the jury had a little problem maybe with the murder count, but I didn't see anything that they had any problems with the conspiracy instructions. Well, perhaps. I mean, I think that it's perfectly reasonable that the jury had – that the juror had a problem with the murder instruction. You say it's reasonable, but the question really is, I think, did they ask for clarification? No. There was no specific question. The only clarification that they had was on the murder count. That's correct. Nothing to do with the conspiracy count. That's correct. So, really, we're down two. Did the instructions, when read together, properly advise the jury of the requisite, specific intent? Correct. Okay. Now, I did want to say that the – the court has mentioned that this was a single instruction in a number of instructions. Number one, it is the instruction on the mental state. It is the instruction. There are no other instructions that explain the mental state otherwise. Number two, the other instructions never explicitly disabuse the jury of the idea that it could find – that it could not find an implied malice murder to convict him of conspiracy. Well, frankly, it didn't seem to me, other than in this one particular instance, that the instructions focused on anything except express malice and the intent to kill. In fact, they focused exclusively on that, except on the one instruction you talk about and continue to emphasize. I failed to see where the other instructions focused on express malice murder. I did not find that reference in other instructions. I noticed that the Attorney General's office made that statement and gave no citation to the record to show exactly which pages and which instructions he was referring to. It's your best argument, counsel, that the jury instructions in this case laid out a specific intent that's required for conspiracy as well as the first-degree murder, but the instructions tells the jury that the specific intent is going to be described to them later on in the substantive offenses. Correct. So the court starts out saying, in order to find him guilty of murder and conspiracy to commit murder, you've got to have a certain mental state, a certain specific intent, and I'm going to tell you what it is later on in the instructions. Correct. So as you move through the instructions, then you get to the conspiracy charge, and the court tells the jury in order to convict somebody of conspiracy to commit murder, you've got to have the specific intent to commit murder. But it doesn't tell the jury how to define the specific intent with regard to first-degree murder, and then you get to the murder charge. Homicide is the unlawful killing of a human being. Murder can be expressed, or it can be malice of forethought can be expressed or implied, and then that's the first time that the implied concept comes into play. And so there's the jury moves through it methodically. There's a cross-referencing involved. Is that your argument? Well, there is. And then when the court tells the jury, here is the intent, the court says it can be either expressed or implied, the intent required for the, you know, to convict him of conspiracy, because that is the intent for the crime, what the, you know, if you say that the crime was to commit murder, and that that is what the jury first-degree murder, and that's what the jury found, or that's what the jury was supposed to be finding, the only instruction that talked about what the mental state is for that crime is the one that said it could be either expressed or implied malice. And I agree with you that I think the instructions are extremely problematic. But the problem, as Judges Quist and Smith have pointed out, is you've got to look at it as a whole. And I didn't see anything in the record that shows that this case was tried on an implied malice theory, just because of the degree of planning and involvement in this case, and the prosecution relied so much on that to demonstrate the expressed malice involved. Well, again, I mean, all I can say to you is that the prosecutor continued to emphasize that they were going to do something to this guy. And throughout the evidence leading up to the actual murder, they did, you know, say all kinds of different things about what they were going to do. This was not just we were constantly saying day after day, okay, we're going to kill him, we're going to kill him, and they're talking to everybody and saying it in that term. They're talking about doing a lot of things to him, many of which, the reasonable probable consequences of which would be lead, you know, it could definitely be murder, but not that they, you know, not that the intent was necessarily to commit murder. It may have been to commit mayhem. Well, I guess the big worry that I have, and that, I mean, I have right in front of me the California Court of Appeals saying any possible confusion that may have accompanied the cursory reference to implied malice was ameliorated by the expressed requirement of intent to commit murder in the conspiracy instructions. That's the court I have to give deference to, which on a habeas situation, that's what they say. My understanding is, is that, is that, and the, and the warden, the attorney general agreed with this, is that you go directly to the Brecht analysis. You don't, it's an independent decision, and you don't, you know, defer to the trial, the court of appeals decision. You look at whether or not. Well, but even if I look under Brecht, and I wanted you to respond to that because that's exactly, but even under Brecht, an instructional error is prejudicial and the habeas reliefs, if appropriate, only if, after reviewing the record as a whole, we conclude there was a substantial injurious effect or influence on the verdict, and we are left with grave doubt as to whether there was such an effect. Correct. And I say on this record, if you look at all of the evidence, that that is, that there is grave doubt. Well, some of the evidence is the nature of the crime. What is it, about 70 stab wounds, cutting his ear off while he's alive? Doesn't it also show some intent to actually kill the person? Well, first of all, Mr. McCarley wasn't convicted of murder, and secondly. I understand, I understand that. Right. And secondly, I mean, given the defense of all the mental deficits that he had, and the, and generally this group of people, and their obvious lack of ability to function as rational people. Still human beings. But not rational. And there was a frenzy that had been whipped up against this man who was being accused of molesting a young girl. And I don't think that, you know, those, I mean, in a frenzy like that, you could have all kinds of injuries that don't mean that there was a conspiracy to commit first-degree murder. Thank you very much, Counselor. Appreciate your argument. Thank you. Good morning, Your Honors. May it please the Court, Alice Luster on behalf of the Warden. As the Court has noted, this was not a case regarding the nature of the agreement. The evidence, the arguments of counsel all show that the nature of the agreement in this case was to kill Hopp Summar. This was a case, in terms of the defense, about whether or not any agreement existed, or whether McCarley was acting on his own in some effort to take revenge for the molestation that allegedly occurred to him as a child, hence the out-of-body experience that he described. The defense counsel's argument, as was noted, said, you must unanimously agree and find beyond a reasonable doubt that the defendants conspired to commit first-degree murder in order to find the defendants guilty of conspiracy. Earlier, defense counsel had said that first-degree murder requires a willful premeditated deliberate premeditated and with express malice. So not only did the defense counsel say to the jury, you have to find first-degree murder beyond a reasonable doubt, but defense counsel also told the jury that in order to have first-degree murder, you must find express malice. So even to the extent that the prosecutor's argument could be viewed as less than clear, and it's true that the prosecutor did not specifically utter the words express malice in his argument, the defense counsel clearly did. Kagan. Does the fact that the jury hung on the first-degree murder charge undermine that argument that you just made? No, Your Honor. And the reason it does not is because the to some extent there was some significant differences, both in the kind of quality of the proof. First of all, conspiracy is an incohate offense. You never have to have a final offense completed, much less have a conviction in order to have a finding that a conspiracy occurred. It is complete once the agreement and an overt act have taken place. So the murder need not ever even have occurred, much less a finding by the jury that it's guilty. Moreover, in this case, the evidence focusing on the murder relied heavily on the testimony of a young boy who was in the back of this Ranchero vehicle and observed, both saw and heard, some of the things that were going on. This young boy's credibility was attacked heavily at the trial, not only his age, his ability to see and observe, his trauma that he would have suffered that might have affected his ability to comprehend what was going on. But there were significant attacks on his credibility based on some questioning that he had undergone during the investigation. And at the time of this trial, they were able to challenge him with inconsistencies not only from police reports and investigations, prior statements that way, but his statement at another trial of additional co-defendants in this case. There had been a previous trial of, I believe, three other co-defendants. In addition to the issues with the credibility that might have led the one juror to hang on this, because this was not an acquittal, this was a hung jury of 11 to 1 for guilt, but in addition to those factors which could have entered into that, we also have the testimony of McCarley himself. He took the stand and said, I was having this out-of-body experience. It was like I was up in a tree observing. And there is nothing inconsistent about him being part of an agreement early on, when people are discussing this over a period of time and several conversations, that we need to kill Hopp Sommer. There's nothing inconsistent with that. And once he finds himself actually in the act of killing, in this murderous act that is taking place with multiple stab wounds, with the man bleeding all over, that the jury, one juror at least, might have felt that that was there was a sufficient break at that time to eliminate the intent to maybe somewhat reduce it. And in fact, that's what, again, the defense counsel argued for in this case. As a part of her, let's see, she talked about the evidence of the PTSD. She explained in detail the allegations regarding his post-traumatic stress disorder that, and said it is, in talking about the mental health instruction, it is circumstantial evidence that my client's PTSD prevented him from forming, from the formation of express malice aforethought. And again, this also ties into the impact of the instruction itself. Again, she's focusing on express malice. She also, in conclusion, summarized the evidence relating to all the charges by saying, there is no robbery or mayhem because that requires a living person. There's no kidnap on Jones. There's no agreement to do anything. And again, the defense here was no agreement, not some kind of implied. But most, most importantly, there is no malice aforethought, no malice aforethought, which makes count one manslaughter. So it is highly possible that when it came to the actual circumstances of the murder itself, the one juror whose vote resulted in the hung jury had bought off on that argument, that maybe this is something less. Maybe this is manslaughter. But that does not negate the evidence and the fact that this case was presented and tried, and the evidence supports that it was an express malice murder. Now, the Petitioner, the appellant, talks a lot about, well, there was, there were statements of they were going to do harm. They were going to hurt him. They were going to, just kind of generic statements about what was going to happen, indicating there was something bad. And the prosecutor's statement to the extent that he did not, to the extent that he cited statements of, they were going to do something to him. He was reciting the evidence. There were statements made at various times that things were going to be done to him. He was going to be hurt. But it is clear from the context that when they said they were going to do him, you have to look at all of the evidence. And there were multiple statements that he was going to be killed. They were clearly soliciting people to kill him. And, in fact, I believe it was Sutton who said, I don't want anything to do with that. And we know, in fact, that Jones and back, I'm sorry, I've forgotten his name, the other person that was with Jones, the attack on Jones, or they were at least told to get out of town, essentially, when they disputed the reason leading to the attack on Sumar. They said, I don't think he could have done that. And they were immediately shunned. And Jones was later attacked based at least in part on statements or an altercation with one of the women. But he was certainly threatened and made to feel like he should depart as soon as he expressed disagreement with the plans that were coming together for this crowd. Do you agree with counsel that I owe no deference to the California Court of Appeals? Well, no, Your Honor. Your Honor, because this is an epic case, I think we have to look at the decision that the California Court of Appeals made. However, there are holdings from this Court that say you can go directly to Brecht. But I think given what you have here and the circumstances that Brecht, the California Court of Appeals applied a higher standard than Brecht and found that it was harmless beyond a reasonable doubt. So I think that the two kind of work together. And there is nothing that says you should just dismiss it. I do agree with her that based on Brecht and based on the issues with Brecht, I don't think we owe a lot of deference. I guess the only thing that I'm looking at here is the California Court of Appeals, who says, well, you know, the reference to the implied malice of second-degree murder violates the rule. And then they say the error was harmless beyond a reasonable doubt. So what I look at is then the Brecht standard, which, as I understand, is substantial or injurious effect or influence on the verdict. Would you agree? Yes, Your Honor. But I think in part, this is also saying that the verdict is harmless beyond a reasonable doubt because of counsel's arguments. Can you find that there was? And I find there was not, just based on arguments. Well, in the ---- You've placed a lot of emphasis on the fact the prosecutor said this, these are the arguments that are questionable. I looked at them to see what they meant. And then you came back with what the defense counsel said. Is that enough for me to make my decision on Brecht? It's just those arguments? Well, I think we're not asking this Court to look at just those arguments. I think the evidence, when you look at that as well, the evidence, the arguments were based on the presentation of the evidence, which was focused on the intent to kill and in the process of killing to put him through as much pain and suffering as they could. Well, I guess if I looked at the instructions on the conspiracy itself, if I look at the instructions altogether, your argument is I can't find it. But if I look at the instructions, as my good colleague presented in her question to counsel, not only was there a failure to instruct that the offense was requiring specific intent, but the instruct ---- instead instructed them the conviction that could occur on an implied malice theory. Your Honor, I think given when you consider the evidence that was presented, the multiple statements about the purpose or the plan was to actually kill the victim in this case, the circumstances of the murder, as was discussed earlier with the incredibly violent and vicious attack, which could under no semblance be considered an intent just to rough him up or hurt him a little bit, that when you look at all of that with the instructions and with the argument, it would take an inordinate amount of parsing on the part of the jury to reach an implied malice theory, especially when they've been specifically told by the defense that it's only express malice, that the prosecutor's arguments address express malice, if not specifically using that word, but by talking about and addressing the mental defense, which, again, the defense counsel talked about that applied both to conspiracy and to the murder. When you look at that as a whole, which is what this Court is required to do, to look at all of the instructions, all of the evidence, and can consider the arguments of counsel as well, that it would just take too much parsing, too much trying to slice very thinly through things to come to a conclusion that the jurors ignored all of those statements that came into evidence, all of the arguments of counsel, providing them some guidance where to look, and reached an implied malice murder in this case. I would also ask the Court, as the California Court of Appeals considered the finding in Bond, who was a co-defendant, whose evidence was virtually the same, except some very minute parts that dealt primarily with specific statements dealing with what was said afterwards about leaving, and in Bond's case, although the Court at one point said the words implied or expressed, did not give the implied malice definition and, in fact, said correction, and then did not give it. And yet Bond also was convicted of conspiracy. Bond also was a hung jury as to the murder charge. So in this way, this case, we think, is uniquely suited to the prejudice analysis under Brecht, because we have a defendant who did not get the definition that is at issue here, and was still convicted on essentially the same evidence. Are there no further questions? No, there are not. Thank you, Counselor. I don't think you have any time left. You went over it before, and we appreciate your argument, and I think we have it well in mind. So thank you very much. Case 11-16126, McCarley v. Spearman, is submitted.
judges: Quist, Smith, Nguyen